UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                               :

TODD SCHULMAN,                  :

                               :

               Plaintiff,     :

                               :

           -v-                 :

                               :

HERBERT E. NASS & ASSOCIATES SEP  :
IRA PLAN and HERBERT E. NASS,    :

                               :

              Defendants.  :

                               :
-----------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/13

No. 10 Civ. 9613 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Todd Schulman brings this action pursuant to the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. against Defendants Herbert E. Nass & Associates SEP IRA Plan, Herbert E. Nass and Herbert E. Nass d/b/a Herbert E. Nass & Associates (collectively, "Defendants"). Schulman alleges, *inter alia*, that Defendants misclassified him as an independent contractor from October 24, 2003 through July 8, 2004 and denied him employee benefits on that basis. Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, Schulman's motion is denied and Defendants' motion is granted in part and denied in part.

## I.    Background[1]

Todd Schulman, an attorney, is suing his former employer, Herbert E. Nass & Associates ("HENA"), and its principal, Herbert E. Nass. (Nass Aff. ¶ 1.) Schulman contends that from

---

[1]    The following facts are drawn primarily from Plaintiff's Rule 56.1 Statement ("Pl. 56.1"); the exhibits attached to the Declaration of Raymond Nardo in Support of Plaintiff's Motion for Summary Judgment ("Pl. Ex."); Defendants' Statement of Facts Pursuant to Local Rule 56.1 in Support of Cross Motion ("Defs. 56.1"); and the Affirmation of Steven Giordano ("Giordano Aff.") and Affirmation of Herbert E. Nass ("Nass Aff.") and exhibits attached thereto ("Defs. Ex.").

October 24, 2003 to July 8, 2004 (the "Relevant Period"),[2] HENA misclassified him as an independent contractor when he was in fact a common law employee entitled to participate in HENA's Simplified Employee Pension Individual Retirement Account ("SEP IRA" or "the Plan"). Nass is the administrator of the Plan, which was instituted in 1991 and amended in 2004. (Nass Aff. ¶¶ 1, 39.)[3]   The Plan "set[s] forth that for a person to be eligible to participate, he or she must be an [e]mployee for at least three (3) of the immediately preceding five calendar years." (Id. ¶ 39; Defs. Ex. A.)   Additionally, "the participants are only entitled to contributions if they are employed for the full calendar year on December 31st of each year." (Id. ¶ 40.) These provisions make the date Schulman became an employee of HENA critical to determining when he became eligible to participate in the Plan.

Schulman began working at HENA on October 24, 2003, while he was awaiting admission to the New York Bar Association. (Pl. 56.1 ¶ 1; Defs. Ex. I.)[4]   According to Defendants, because Schulman was not yet admitted to practice as an attorney in New York, he was hired as an independent contractor and paid on an hourly basis. (Nass Aff. ¶¶ 9-10.) During the Relevant Period, Schulman submitted billing memoranda to the firm which detailed the hours he worked each day and was not entitled to sick pay, vacation days or health benefits. (Pl. Ex. 14; Nass Aff. ¶ 17.)   Defendants also provided Schulman with IRS Form 1099s, which are used

---

[2]     Although the parties disagree about whether the final day of the disputed period is July 1, 2004 or July 8, 2004, the difference is not relevant to the Court's analysis.

[3]     Schulman argues that the 1991 Plan and not the 2004 amended Plan controls because "Nass' testimony that he adopted the Merrill Lynch SEP/IRA in 2004 cannot be credited." (Pl. Mem. 10.)  He claims that the 2004 Plan is not genuine because "the document Nass contends he signed in 2004 contains reference to the 2007 and 2008 tax years." (Id. at 10-11.)  Although this allegation is significant because the 1991 Plan does not contain a requirement that an employee work for a certain number of years before becoming eligible (Pl. Ex. 3.), Schulman presents no evidence to support his theory.  The Court thus declines to find that Defendants have submitted a fraudulent document to the Court and considers the 2004 Plan as the operative plan for purposes of this motion.

[4]     Where only one party's Rule 56.1 statement is cited, the opposing party either does not dispute that fact or has offered no admissible evidence to controvert it.

to report earnings of independent contractors, (Pl. Ex. 7), instead of W-2s, which employees would have received.

The parties disagree about Schulman's role at the firm and the degree of Defendants' control over him during the Relevant Period. Schulman testified that his tasks were to "dr[aw] wills, trust agreements, probably petitions for Surrogate's Court, perhaps receipt and release; estate related work, estate planning and estate administration related work." (Pl. Ex. 18 at 47:11-18.) According to Schulman, he "us[ed] the resources of [the] firm" to complete his work including HENA's desk, computer, telephones and notepads. (Id. at 97:17-24.) Schulman further testified that although Nass "was not sitting watching over [his] shoulder," (id. at 104:22-105:2), he actively supervised Schulman's work. He described Nass' supervisory role as follows:

> [Finished work] went to [Nass'] desk for review by him. He would then mark it up, call me in and discuss it with me and tell me about any changes that he wanted to have made. In those earlier times, especially, but continuing even through the later years, he would educate me on things that he thought I could use an education on. Especially at the very beginning I didn't know anything about drafting a will or a trust agreement, and I would make further changes, leave it for him to review again, and that process would continue until he deemed it satisfactory.

(Id. at 104:2-17.)

Defendants, on the other hand, describe Schulman's role during the Relevant Period as "limited in scope." (Nass Aff. ¶ 11.) According to Defendants, because Schulman was not yet an admitted attorney and could not sign documents on his own, his tasks were limited to typing and drafting letters. (Id.) Nass asserts that he exercised no control over how Schulman completed his tasks during that time, but rather that Schulman was given "full autonomy concerning how he wished to complete [his] tasks." (Id. ¶¶ 12, 15.) For instance, Nass maintains that Schulman set his own hours, determined whether he wanted to work from the

HENA office or elsewhere, and chose his own materials.  (Id.)  After Schulman completed an assignment, he would submit the work to Nass who would review the document and return it to Schulman for completion.  (Id. ¶ 14.)

By July 8, 2004, Schulman had become an admitted attorney and HENA made him an associate of the firm, and thereby a salaried employee.  (Id. ¶ 31.)  At this point, he began receiving employee benefits such as sick pay, health benefits and vacation time.  HENA began furnishing him with IRS Form W-2s, which are used to report employee earnings.  (Pl. 56.1 ¶ 30.)  Defendants claim that it was at this time—when Schulman became an associate of the firm—that Nass first began to exercise control over Schulman's work.  (Nass Aff. ¶ 31.) Schulman was terminated in August 2008 but continued to work at HENA in some capacity until November 14, 2008.  (Pl. 56.1 ¶ 4; Nass Aff. ¶ 35.)

On June 26, 2009, Schulman sent a letter to Nass requesting documents pertaining to HENA's SEP IRA Plan.  The letter provided, "I was employed by Herbert E. Nass, d/b/a Herbert E. Nass & Associates, from 10/24/2003 through 11/14/2008, and am thus a participant, within the meaning of 29 U.S.C. § 1002(7), in the firm's SEP IRA."  (Pl. Ex. 6.)  Nass did not provide Schulman with the requested Plan documents, believing that Schulman, as a terminated employee, was not entitled to them.  (Nass Aff. ¶ 48.)  Schulman then filed a complaint with the Department of Labor.   In September and November 2009, Nass formally responded to Schulman's complaint and included a copy of the Plan in that response.  (Id. ¶ 49.)

Two years later, on December 29, 2010, Schulman filed the Complaint in the instant matter.  The Complaint alleges that Defendants misclassified him as an independent contractor during the Relevant Period and that he was thus improperly denied eligibility to participate in the Plan.  Defendants filed counterclaims against Schulman for fraud and attorney's fees and costs.

Schulman and Defendants have each moved for summary judgment.  For the following reasons, Schulman's motion is denied and Defendants' motion is granted in part and denied in part.

## II.      Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact."  Zaleski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010) (citing Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)).  "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The standard to be applied when deciding cross-motions for summary judgment is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other."  Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (internal quotation marks omitted).

## III.     Discussion

### A.      Schulman's Claims Against Defendants

The gravamen of Schulman's Complaint is that he was misclassified as an independent contractor during the Relevant Period and thus improperly denied benefits enjoyed by HENA employees who had been employed for the necessary time period under the Plan.  (See Pl. Mem. at 3 ("The only issue for this court to decide is whether plaintiff was a common law employee from October 24, 2003 through July 8, 2004.").)  Schulman seeks damages pursuant to Section 502(a)(1)(B) of ERISA for such allegedly wrongfully denied benefits.  The Complaint also alleges that Defendants' conduct "constitutes a knowing violation of ERISA and a breach of

fiduciary duty of behalf of [D]efendants."  (Compl. ¶ 44.)  This claim is presumably brought

under Section 502(a)(3) of ERISA, which provides a cause of action for a breach of fiduciary

duty.  Lastly, Schulman alleges that "Defendants refused and failed to provide any documents

and information to plaintiff, which constituted a knowing violation of ERISA."  (Id. ¶ 51.)[5]

Schulman moves for summary judgment on these claims and Defendants' cross-motion seeks

their dismissal.  Defendants argue that the claims are barred by the statute of limitations and are,

in any event, meritless.  The Court need not delve into the merits of Schulman's claims because

the applicable statutes of limitations bar Schulman's benefits claims.

### 1.   Schulman's Claim Under Section 502(a)(1)(B) Is Dismissed as Time-Barred

Section 502(a)(1)(B) "creates a cause of action for, *inter alia*, a participant in a pension

plan covered by ERISA 'to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

plan.'"  Carey v. Int'l Bhd. of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 46 n.2

(2d Cir. 1999) (quoting 29 U.S.C. § 1132(a)(1)(B)).  "[A]lthough ERISA does not prescribe a

statute of limitations for violations of Section 502(a)(1)(B), our Circuit holds that the appropriate

statute of limitations under analogous New York law is the six year statute of limitations that

applies to claims for breach of contract."  Schultz v. Texaco, Inc., 127 F. Supp. 2d 443, 448

---

[5]      The Complaint contains two claims not raised in either party's motion for summary judgment.  In Count III, Schulman alleges that "Defendants breached its contract under the Plan by failing or refusing to enroll Schulman in the Plan."  (Compl. ¶ 47.)  To the extent Schulman seeks to bring a breach of contract claim, "it appears that plaintiff has abandoned this claim, because it is not raised elsewhere in the record."  Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998).  Moreover, this claim would be time-barred for the substantially the same reasons as set forth below.  See Schultz v. Texaco, Inc., 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (citing Miles v. New York State Teamsters Conf. Pension and Ret. Fund, 698 F.2d 593, 598 (2d Cir. 1983) *cert. denied*, 464 U.S. 829 (1983)).  In Count V, Schulman alleges that Defendants did not "adequately explain and timely communicate" the Plan's Salary Reduction option to Schulman and he was thus "wrongfully den[ied] the opportunity to put the maximum amount possible under the Plan into an Individual Retirement Account for his benefit."  (Compl. ¶¶ 53-57.)  As alleged in the Complaint, this amounts to a breach of fiduciary claim and is thus incorporated into the Court's discussion of Section 502(a)(3).

(S.D.N.Y. 2001) (citing Miles v. New York State Teamsters Conf. Pension and Ret. Fund, 698 F.2d 593, 598 (2d Cir. 1983) *cert. denied*, 464 U.S. 829 (1983)).   A claim under Section 502(a)(1)(B) "accrues when a plan clearly and unequivocally repudiates the plaintiff's claim for benefits and that repudiation is known, or should be known to the plaintiff."   Carey, 201 F.3d at 49-50.

For individuals who claim that they were misclassified, this repudiation occurs "when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits."   Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406, 409-10 (S.D.N.Y. 2003) (collecting cases).   Schulman testified that sometime before he filed his tax returns in April 2004—"probably" January or February—he received a Form 1099 from Defendants which identified him as an independent contractor.   (Defs. Ex. C at 246:4-25.)   Furthermore, although Schulman contends that this Form 1099 was sent in error (id.), he identified himself as self-employed and included his income as business income on his personal tax returns for that year, (Defs. Ex. B).   Accordingly, by April 2004, Schulman was aware that he was classified as an independent contractor and "on clear notice that [he was] not entitled to benefits."   Ambris v. Bank of New York, No. 96 Civ. 0061 (LAP), 1998 WL 702289, at *6 (S.D.N.Y. Oct. 2, 1998).

Schulman argues that his claim could not have accrued in 2004 because he was not informed of the Plan until 2008.   He provides no case law, however, to support this contention.

Schulman attempts to distinguish this case from Brennan v. Metropolitan Life Insurance Co., 275 F. Supp. 2d 406 (S.D.N.Y. 2003) because there, the plaintiffs signed agreements expressly excluding them from their employer's benefit plans.   There are numerous other cases, however, several of which are cited in Brennan, which have found a plaintiff to be aware of his

or her misclassification and exclusion from an employee benefit plan in the absence of an explicit agreement or notification of the specific details of the plan. See, e.g., Texaco, Inc., 127 F. Supp. 2d at 448 (concluding that when plaintiffs were taken off their employers' payrolls "the repudiation, which is the basis for this lawsuit, was known, or, at a minimum, should have been known to plaintiffs" despite plaintiffs' argument that "they did not understand that their benefits would, as a result be denied"); Kryzer v. BMC Profit Sharing Plan, No. 01 Civ. 299, 2001 WL 1587177, at *4 (D. Minn. Nov. 1, 2001) (rejecting argument that repudiation requires communication from the Plan Administrator and concluding that plaintiff was aware "that the Plan would not consider him eligible for benefits under the Plan when he signed the first independent contractor agreement that clearly provided that he would not be considered an employee"); Ambris, 1998 WL 702289, at *6 ("[P]laintiff never applied for benefits and therefore never received a clear repudiation in response to an application [but] . . . a clear repudiation . . . was present in the sense that the knowledge that [Plaintiff], and others like her, were not eligible for benefits was clear and pervasive."). Schulman provides no basis to distinguish these cases and no case law standing for the proposition that a misclassified employee cannot be found to have been aware of his misclassification due to a lack of knowledge of the Plan or lack of access to Plan documents.

Moreover, in Downes v. JP Morgan Chase & Co., No. 03 Civ. 8991 (GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004), Judge Lynch concluded that "the breach that triggers the statute of limitations occur[s] when one or more fiduciaries of [the Plan] classifie[s] [the plaintiff] as an independent contractor rather than as an employee." Id. at *4. In so doing, he noted that "it blinks reality to assert that [the plaintiff] remained unaware of th[e] alleged breach, for its consequences—that she did not receive employee benefits—would have soon if not

immediately been, apparent."  Id.

Schulman attempts to distinguish Downes by claiming that it is limited "to cases where employees are classified as independent contractors for the duration of their employment, distinguishing it from the present case where an employee's status changes over time, which causes confusion about entitlement to benefits."  (Pl. Opp. at 3.)  In support thereof, Schulman looks to the following line from Downes: "[i]f discovery has yielded evidence suggesting that Downes, while not initially hired by J.P. Morgan as an employee, in time became a *de facto* employee under common-law agency principles, the Court would be inclined to grant her leave to replead her claims for employee benefits insofar as not time-barred."  2004 WL 127791, at *4.  Schulman's reliance on this dicta is misplaced, however, as it merely suggests that if an independent contractor's role changes into that of a de facto employee, the court will look to the date that the individual began being treated as an employee as the date his claim accrued. The allegation in the case at hand, however, is that Schulman was misclassified when he first started working for HENA in October 2003.  Accordingly, Downes appears to be right on point and this Court agrees with the reasoning therein.

Because Schulman knew of his alleged misclassification as an independent contractor during that alleged misclassification from October 2003 to April 2004 and did not file his Complaint until December 2010—more than six years later—his Section 512(a)(1)(B) claim is time-barred.

## 2.  Schulman's Claim Under Section 502(a)(3) Is Dismissed as Time-Barred

Schulman also brings a breach of fiduciary duty claim which Defendants argue is similarly time-barred.  Although not entirely clear from the Complaint, this claim is presumably brought pursuant to Section 502(a)(3) of ERISA.  The statute of limitations for a breach of

fiduciary duty claim pursuant to Section 502(a)(3) is statutorily prescribed in Section 413 of

ERISA:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation on this part, after the earlier of –
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach of violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> Except that in the case of fraud or concealment such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  The Second Circuit has explained these three alternative limitations period as

follows:

> The first period, applicable in the absence of any special circumstances, is six years from the date of the last action that was part of the breach.  The second period is three years, applicable and beginning when a putative plaintiff has "actual knowledge" of the violation, defined as "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001).  However, "constructive knowledge" of the breach does not trigger the three-year period.  See id. at 194.  The third period is six years, applicable where a complaint alleges fraud or concealment with the requisite particularity . . . . [T]his six year period is tolled until the plaintiff discovers, or should with reasonable diligence have discovered, the breach.  See id. at 190.  To successfully plead this "fraud or concealment exception," a complaint must allege that a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of a fiduciary duty."  Id.

Janese v. Fay, 692 F.3d 221, 228 (2d Cir. 2012).

Applying the first statute of limitations period, Schulman's claim is time-barred and thus

the Court need not consider whether the shorter, three year statute of limitations period is

appropriate.  Under the first limitation period, the plaintiff has six years from the date of the last

action which constituted a part of the breach to file his claim.  Neither Schulman's motion for summary judgment nor his opposition to Defendants' motion discusses his breach of fiduciary duty claim as distinct from his Section 502(a)(1)(B) claim for benefits under the Plan.  The Court thus considers the misclassification which began in October 2003 and ended in July 2004 as the relevant breach of fiduciary duty.  See Downes, 2004 WL 1277991, at *4 ("[A]ssuming that Downes can properly assert a claim for breach of fiduciary duty . . . the breach that triggers the statute of limitations occurred when one or more fiduciaries of one or more of J.P. Morgan's employee benefit plans classified Downes as an independent contractor rather than an employee . . . .")  Because Schulman brought his claim more than six years after the last action that was part of the breach, his claim is time-barred and the Court need not determine whether the three year statute of limitation for "actual knowledge" applies.

Schulman argues that Defendants "fraudulently concealed" the Plan from him and that the statute of limitations thus began to run in 2008 when he learned of the Plan's existence.  Presumably, Schulman seeks to have the Court apply the "fraud or concealment" provision set forth in Section 413 of ERISA for claims brought pursuant to Section 502(a)(3) for breach of fiduciary duty.  To apply the "fraud or concealment" provision, the Court must first find that a fiduciary "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of a fiduciary duty."  Caputo, 267 F.3d at 190.

As discussed above, in this case the breach of fiduciary duty is the misclassification and thus even if there was evidence that Nass had concealed the Plan—which there is not—the concealment would not have prevented Schulman's discovery of the breach.  There is no evidence in the record that Nass made a knowing misrepresentation or omission to Schulman

11

regarding his classification to induce him to act in his detriment or that he hindered Schulman's

discovery of his classification as an independent contractor.  By reporting Schulman's earnings

on Form 1099s and failing to provide sick pay, vacation days or health benefits, Defendants were

explicit that Schulman was considered an independent contractor throughout the Relevant

Period.  Accordingly, Schulman cannot take advantage of the "fraud or concealment" provision.

### 3.   Schulman's Claim Under Section 502(c) Is Dismissed

Lastly, Schulman seeks summary judgment on his claim that "Defendants refused and

failed to provide any documents and information to plaintiff, which constitutes a knowing

violation of ERISA."  (Compl. ¶ 51.)  This claim is presumably brought pursuant to Section

502(c) of ERISA which provides:

> [a]ny administrator . . . who fails or refuses to comply with a request for any
> information which such administrator is required by this subchapter to furnish to a
> participant or beneficiary within 30 days after such request may in the court's
> discretion be personally liable to such participant or beneficiary in the amount of
> up to $100 a day from the date of such failure or refusal.

29 U.S.C. § 1132(c)(1).[6]  "[T]he ultimate assessment of penalties is a discretionary matter for the

district court."  <u>Devlin v. Empire Blue Cross and Blue Shield</u>, 274 F.3d 76, 90 (2d Cir. 2001).

In order to receive penalties pursuant to Section 502(c), a plaintiff must be a "participant

or beneficiary."  29 U.S.C. § 1132(c)(1).  As defined by ERISA:

> the term "participant" means any employee or former employee of an employer,
> or any member or former member of an employee organization, who is or may
> become eligible to receive a benefit of any type from an employee benefit plan
> which covers employee of such employer or members of such organization, or
> whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).  This definition includes employees with "a colorable claim that [they] will

prevail in a suit for benefits," because such individuals "may become eligible" for benefits

---

[6]      Penalties under ERISA were increased to $110 per day pursuant to the Federal Civil Penalties Adjustment
Act of 1990, as amended by the Debt Collection Improvement Act of 1996, for any violations occurring after July
29, 1997.  <u>See</u> 29 C.F.R. 2575.502c-1.

within the meaning of the statute.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 106 (1989).  "[I]n assessing a claim for penalties [pursuant to Section 502(c)], courts have considered various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant of beneficiary."  Devlin, 274 F.3d at 90 (quoting Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1994) (collecting cases)).  In fact, "a number of courts have opted to forgo awarding statutory damages unless there has been a bad faith action by the defendant resulting in severe prejudice to the plaintiff."  De Nicola v. Adelphi Academy, No. CV-05-4231, 2006 WL 2844384, at *9 (E.D.N.Y. Sept. 29, 2006) (collecting cases).

The first date that Schulman allegedly requested Plan documents is June 26, 2009, nearly one year after his termination, and he claims that he did not receive the documents from Nass until May 19, 2011.  (Pl. Ex. 6; Pl. 56.1 ¶ 47.)  Defendants acknowledge that they did not provide the Plan documents to Schulman when he requested them in 2009.  (Nass Aff. ¶ 48.) Instead, Nass has averred that Schulman "was free to obtain the Plan documents when he was under my employ" but after his termination "he was not entitled to them."  (Id. ¶¶ 47-48.)  When Schulman filed a complaint with the Department of Labor ("DOL") in June 2009 regarding this dispute, the DOL sent a letter to Defendants seeking more information.  (Defs. Exs. R-S.) Defendants responded to this letter on September 15, 2009 and included a copy of the Plan. (Defs. Ex. R.)  Although not from Nass directly, Schulman did receive a copy of Defendants' submission to the DOL.  (Defs. Ex. H 291:12-20.)  Defendants have argued that they had a good faith belief that Schulman was not entitled to Plan documents as a terminated employee and thus only provided them when prompted by the DOL.  Because there is no evidence that Defendants acted in bad faith and because none of the other relevant factors suggest otherwise, the Court

13

declines to issue penalties pursuant to Section 502(c) as a result of Defendants' failure to provide Schulman with Plan documents.

### B.   Defendants' Claims Against Schulman

Defendants also move for summary judgment on their counterclaims for fraud and attorney's fees and costs.

### 1.   Defendants' Fraud Claim Is Dismissed

Defendants allege that Schulman "fraudulently represented to the Court that he was an employee" of HENA and "fraudulently filed and maintained the instant lawsuit claiming that he was eligible to participate in the Herbert E. Nass & Associates SEP IRA Plan as of January 1, 2006." (Ans. & Counterclms. ¶¶ 88, 95.)  In order to prove a fraud claim under New York law, a party must demonstrate "a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the [party] and resulting injury." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (quoting Kaufman v. Cohen, 307 A.D.2d 113, 199 (1st Dep't 2003)).

Defendants' fraud counterclaim is meritless.  The alleged false statements upon which Defendants' fraud claim is based are nothing more than allegations in a complaint. See Cheng Chung Liang v. J.C. Broadway Rest., Inc., No. 12 Civ. 1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) ("The allegations in the complaint are just that: allegations.").  Moreover, Schulman's allegations that he was a de facto employee and eligible to participate in the Plan are not "representation[s] of material fact" necessary for a fraud claim but merely legal conclusions that Schulman urges the Court to reach.  Although Schulman did not make a formal cross-motion seeking summary judgment on Defendants' counterclaims, a summary judgment motion "searches the record" and thus the court may grant summary judgment to the non-movant where

14

justified by the evidence in the record, even in the absence of a cross-motion.  Hoyle v. Dimond, No. 08-CV-347C, 2013 WL 1152037, at *10 (W.D.N.Y. Mar. 19, 2013); MyPlayCity, Inc. v. Conduit Ltd, No. 10 Civ. 1615 (CM), 2012 WL 1107648, at *17 (S.D.N.Y. Mar. 30, 2012); 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2720 at 347-52 ("The weight of authority . . . is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").  Accordingly, the Court grants Schulman summary judgment on Defendants' fraud counterclaim.

### 2.    Defendants' Claim for Fees and Sanctions Are Denied

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "[T]he proper standard for determining whether a fee claimant is eligible for § 1132(g)(1) fees is whether the claimant has achieved 'some degree of success on the merits,' not whether the claimant was a 'prevailing party.'"  Toussaint v. JJ Weiser, Inc., 648 F.3d 108, 110 (2d Cir. 2011) (quoting Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2158 (2010)).  "[A] claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'pure procedural victory.'"  Hardt, 130 S. Ct. at 2158.

Once a court has determined that a party has had some success on the merits, the "court may apply—but is not required to apply—the Chambless factors 'in channeling [its] discretion when awarding fees.'"  Toussaint, 648 F.3d at 110 (quoting Hardt, 130 S. Ct. at 2158).  The Chambless factors instruct the court to consider:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

LaForest v. Honeywell Int'l Inc., 569 F.3d 69, 75 (2d Cir. 2009) (quoting Chambless v. Masters,

Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987)).  "Courts have cautioned that the

five factors very frequently suggest that attorney's fees should not be charged against ERISA

plaintiffs."  Salovaara v. Eckert, 222 F.3d 19, 28 (2d Cir. 2000) (internal citations and quotation

marks omitted); see also Mahoney v. J.J. Weiser & Co., 646 F. Supp. 2d 582, 590 (S.D.N.Y.

2009) ("[W]hen fees are sought by a prevailing defendant, courts, including our Court of

Appeals, have frequently concluded that the factors ordinarily slant in favor of the plaintiff and

militate against an award of fees.").

        Defendants contend that attorney's fees should be charged against Schulman because

"[o]ne cannot be permitted to affirmatively swear, under penalty of perjury on tax returns, that he

is a non-employee, and then seven (7) years later attempt to benefit from a contrary claim before

the Court."  (Defs. Mem. at 22.)  Moreover, Defendants argue that "as an admitted member of

the bar, [Schulman] should be held to an extremely high standard and made an example of for his

fraud in this action."  (Id.)

        Even assuming that the Court's dismissal of Schulman's claims on statute of limitations

grounds constitutes "some degree of success on the merits" by Defendants, see Scarengella &

Sons, Inc. v. Group Health, Inc., No. 12-2750-cv, slip op. at 11 (2d Cir. Sept. 10, 2013) (vacating

district court's finding that dismissal for failure to state a legally cognizable claim was not "some

degree of success on the merits" based on "traditional notions of adjudication on the merits"); cf.

PRC Harris, Inc. v. Boeing Co., 700 F. 2d 894, 896 (2d Cir. 1983) (observing that "[t]he

longstanding rule in this Circuit . . . is that a dismissal for failure to comply with the statute of

limitations will operate as an adjudication on the merits" for purposes of res judicata), the Court

nevertheless declines to award Defendants attorney's fees, upon application of the Chambless

16

factors.  The record does not contain any evidence suggesting that this action was brought in bad faith.  Although ultimately time-barred, the Court does not find Schulman's claim that he was mischaracterized as an independent contractor frivolous or that an award of fees against Plaintiff would be likely to deter frivolous lawsuits.  Accordingly, Defendants are not entitled to an award of attorney's fees. [7]

## IV.   Conclusion

For the foregoing reasons, Schulman's motion for summary judgment is denied. Defendants' cross-motion for summary judgment to dismiss the complaint is granted and their counterclaims are dismissed.

A telephone conference has been scheduled for September 19, 2013 at 2:00 p.m. to discuss Schulman's request to "renew[] his application to amend the complaint to allege a cause of action for retaliation under ERISA," (Pl. Opp. at 10), which was denied without prejudice on December 13, 2011 by Judge Daniels, to whom this case was previously assigned, (Dkt. No. 25). The parties shall jointly call Courtroom Deputy Allison Cavale at (212) 805-0162.

The Clerk of Court is respectfully directed to terminate the motions at docket numbers 36 and 40.


SO ORDERED.

Dated:        September 11, 2013
              New York, New York

                                                Ronnie Abrams
                                                United States District Judge

---

[7]        Schulman also seeks attorney's fees and costs.  Because he has not achieved some degree of success on the merits, the Court declines to grant his request.  See Katzenberg v. Lazzari, 406 F. App'x 559, 563 (2d Cir. 2011).